If it please the Court, my name is Mary Lou Hilberg and I'm here on behalf of Michael Owens. It appears that it's another Monday morning for guns, money and drugs in this courtroom, because that's what this case is about. And I recognize that in an appellate courtroom when I'm standing here arguing the facts that I'm at a decided disadvantage, but the facts that I want to point out to this Court were not contested. Number one is that Mr. Meyer should not have been practicing law. He was only practicing law at the time because we had no functioning state bar disciplinary system at the time. There wasn't even a fox left to guard the hen house because of the standoff between the Governor, Pete Wilson, and the state bar council. But he still was a licensed attorney. For until 16 days, 16 days after the defendant was sentenced. But then how do you get around Young v. Runnels? How do I get around what? How do you get around the well-documented law that an attorney who may be under disciplinary cloud, if not disbarred, is not assumed to be inadequate? The Strickland standard nevertheless applies. I concede that. I would love to have chronic in my pocket, but I don't. And I concede that, Your Honor. But the uncontested facts here are, is that there was a third party present at the scene. There was a black knit stocking cap that had saliva that didn't match either my client or the co-defendant, Mr. Lankin. There were two brown hairs that were long and straight. And both my client and the co-defendant were African-American. There was a short Hispanic man seen running from the scene. And that appeared to be the same man that Marisol, the daughter and niece of the decedent, saw holding a gun to the uncle's head. The gun, there was a gun used by Alejandro that was conceded because he had gunshot residue on his hand. And that gun just disappeared. But, Counsel, I appreciate you've got a lot of facts which you can argue, and you're doing a good job of it. But I guess my worry is the standard of review in this case. This is a habeas standard. And so therefore, it's not enough for a court to be an error. I have to have an unreasonable application of Supreme Court precedent. And given that, I have evidence that your client had backpacks, that the backpacks contained the duct tape, shotgun shells, a latex glove, ammunition like the ones owned by the defendant, that your client's fingerprint was found on the glove, that your client's car was found near the scene, and your client was linked to the co-defendant. And with all of those facts, I guess I'm having a tough time seeing how that violates the standard that there's an unreasonable application of Supreme Court standard. The problem, Your Honor, is that I think the ineffective assistance of counsel here came really from the decision to argue that my client was an innocent bystander, which was patently absurd. I agree with you. It was patently absurd to say he was just walking down the street innocently and shot by the gun, by the drug dealers, when his gun was linked to the scene and was found close by him. But doesn't, I mean, it sounds to me like you're, and you can correct me if I'm wrong in this apprehension, it sounds like what you're saying is that competent counsel would have presented to the jury a theory of drug deal gone bad, for lack of a better description. Exactly. Instead of innocent bystander, my guy was just walking by and happened to get shot. Correct? Right. I agree that was patently absurd. Doesn't some of the evidence, in fact, some of the very evidence that Judge Smith went through, contradict even that theory? It does. But I think what's overwhelming in this case is the uncontradicted fact that both decedents had $5,000 in cash neatly tucked into their pockets, just folded over, not put in their wallet or anything, just tucked into their pockets like they had just gotten it. And I have never seen a robbery in 28 years of practice where $10,000 in cash is left standing on the table. This is clearly a drug deal gone bad. I think the overwhelming evidence, even under the uphill standard that I admit that I have, shows that there was a reasonable probability, but for competent counsel, that my client would have had two convictions for second-degree murder rather than two convictions for second-degree murder. Assuming, assuming, if the government assumes but without admitting, the State assumes without admitting, that competent counsel would have pursued the third-party involvement situation. In light of the evidence which Judge Smith has recounted was adverse to your client, how can we, as an appellate court in a habeas case, conclude that it's reasonably probable that the result would have been different? That's your bottom line here. I understand. Now, answer that. Well, again, my bottom line is that there should not have been two counts of first-degree murder with special circumstances, that the bottom line should have been two counts of second-degree murder. I'm not saying that... We can't help what the State charges anyone with. That's out of our hands. The only issue before us is if the State acknowledges that, yes, I'm not saying they will, but that he should have pursued third-party liability here. You have to convince us that the reasonable probabilities, and I think that's like 51 percent or whatever, I don't know what it is, I don't think anyone has ever quantified it in arithmetic terms, but it's a pretty high standard, that we're going to say, if that had been pursued, you wouldn't be here because your client would have been acquitted. I don't think that it's necessary to say that my client would have been acquitted. It's necessary to say there's a reasonable probability of a better result at trial. That's... I stand corrected. You're right. I stand corrected. And that's what I'm arguing, Your Honors. I'm not arguing he would have walked away from this. So he would have walked away with what, then? He would have walked away with two counts of second-degree murder, because there was clearly involved in this drug deal. Even if he was outside and standing guard, he was clearly involved in this drug deal. And I can't see how he could possibly have walked away with anything less than two counts of second degree as an aider and abetter. That's an interesting argument. I'm not focused on it until now. What's your best case to support the notion that all you have to show is a better result would have obtained? Isn't that what Strickland says? Doesn't Strickland say there's a reasonable probability of a better result at trial? That's my – what I have to put into my memory. I've always thought of it as acquittal. I don't believe that's what it says, Your Honor. I believe it says a reasonable probability of a better result. And I could, you know, I could be wrong. Lord knows this wouldn't be the first time it's happened. But that's what my memory serves. And I think I can meet that standard of a better result. You're down to about a minute and 40 seconds. Do you want to save some time for rebuttal? Yes, thank you. Thank you very much for your argument. We'll hear from the warden at this time, counsel. Maybe you could start, after introducing yourself, with the point we were just discussing. About the Strickland standard? Yeah. Whether Strickland requires that an over – complete overturning of the result or just a better result. Go ahead and introduce yourself so it's on tape. May it please the court, my name is Tammy Warwick and I represent the respondent appellee, Warden Runnels. Strickland standard is that, first of all, counsel's performance is deficient. And then second, that it's prejudicial in that there's a reasonable probability that but for the errors, result would have been more favorable. I'm not aware of any cases that indicate whether – what that favorable outcome would be. But it doesn't have to be an acquittal. I mean, I think there are cases that say it could be, like in a capital case, instead of death, it could be life imprisonment. There's – in capital cases, they argue that all the time in ineffective assistance. They say this is a case where my client should have been given life and not – so it's an interesting point, seldom comes up. But I think she's right that it just has to be a better result. It doesn't have to be an acquittal. Without having the benefit of briefing the issue, I would think the language would indicate just a more favorable outcome. Yes. And my – the response to that is that in this situation, even under the theory that it's a drug deal gone bad, it was not likely that the jury was going to buy that theory, given the fact there were no drugs found at the scene and also the fact there were – the backpack that contained duct tape, ammunition, a latex glove. Gloves were found by Mr. Owens when he was shot. There was no – there was no – I shouldn't say there's no possibility, but it wasn't likely that, as the district court found, that it may have been a more plausible theory than the theory counsel argued. But there was overwhelming evidence that this was a burglary, an attempted robbery. And the fact that there was money left doesn't indicate – it was charged as an attempted robbery. He was found guilty of an attempted robbery. The fact that money was left doesn't mean he didn't attempt a robbery. Obviously, something went really wrong in this situation. There were 9-millimeter casings from Mr. Owens' gun that were – there were at least nine of them found in the house, one in the body of Alejandro. And there was also – he was also shot by a .45 that was found at the feet of one of the victims. So the job didn't get finished. There was a shootout. There's no doubt about that. The evidence indicates that there was some sort of shootout. And that also in the backpack there was found a shotgun that was also linked to the crime scene. There were bullet casings found in the house from that gun. Suppose the jury, on the evidence presented to them, had concluded that Owens went there with the plan of robbing these individuals and that in the course of attempting to do so, there was a shootout and two deaths resulted. Could the jury, under applicable California law, have concluded first-degree murder? Absolutely. And that's what happened in this case. The prosecution argued the – without mentioning the words felony murder theory, the prosecution argued in the closing that they didn't believe that – robbed these individuals and a death resulted. The jury found true the special circumstances that this was committed in the course of a felony, an attempted robbery and a burglary. So it – the whole theory of the case was that they went there to either rob the victims of either money or drugs and that – and although the robbery wasn't completed, it was an – it was charged and they found Mr. Owens guilty of attempted robbery. And I – Suppose the backpack had been empty. Does that change the analysis? I think if the backpack had been empty, it would have been a closer case with the evidence as to whether it was a drug deal gone bad or an attempted robbery. But with the contents of the backpack, it seems pretty compelling evidence that this was – the intent was to burglarize and to rob the victims. I also want to address the fact about the investigation that counsel was not ineffective for failing to investigate the evidence that Mr. Owens argues points to a third party. There was no evidence of a third party other than Mr. Lampkin. The prosecution's theory was that Mr. Owens didn't act alone. He had a companion. All the evidence was consistent that that was Mr. Lampkin. In particular, the witness statements said that they saw a Hispanic man. The height measurements varied, but it could be concluded that that was a short man. There was evidence that Mr. Lampkin was 5'9". The witness statements went from 5'9 to 5'11". No one indicated that they got a good look. There was only one witness that – not testified, but in an interview said that he might possibly be able to identify the person. In addition, the missing gun – there was no evidence of a missing gun. Mr. Owens points to the fact of the gunshot residue found on both of the victims, but the experts specifically testified at trial that that does not mean an individual has to fire a gun to have gunshot residue, that they can be in the environment. And Mr. Alejandro was shot multiple times. So there's no question that he could have had gunshot residue on his body from being shot multiple times. So this theory of a missing gun, there's just absolutely no evidence of it in the record. Don't you have to concede that counsel was ineffective for not arguing third-party liability here in that the position he took was really hopeless, that he was just walking by with all of this evidence against him, that at the very least he should have taken a different tack here and said, well, maybe I was a, you know, a lookout or something else. But what he did was tantamount to throwing in the towel because he took a position that was laughable. Well, first of all, as far as the third-party theory, you have to have – in order to get an instruction at trial, you have to have substantial evidence. There was no substantial evidence of a third party other than Mr. Lampkin. Well, to start with that, and he did no investigation as to the record, I think, is absent of any investigation he undertook in order to shore up that position. Perhaps he could have made some hay there. Actually, in Mr. Owen's brief, they allege that counsel told him that he did not investigate the individuals further because two were out of state and one wasn't cooperative because of a language barrier. Interesting enough, one of the witness interviews, there was an individual that they had to use an interpreter for the – to be able to tell what he said. So even by Mr. Owen's allegations, counsel gave explanations for why he didn't further investigate these individuals or call them as witnesses. I don't know if that's true or not, but that's by Mr. Owen's allegations. And the fact that he had reasons for not calling them and the witness interviews don't indicate that they could have given anything further than what was stated in the interview, which was a very sketchy description of the individual they saw running. And as to the theory of the case, we can – it does seem that there was a more plausible – there may have been a more plausible theory, but counsel was faced with a very difficult case. And there was really, as the district court found, no good defense here. And the drug deal gone bad may have been a more plausible theory, but it still was not likelihood – likely to get the defendant a better outcome in this case. And so certainly, whether or not we can debate as to whether counsel's performance was deficient, it was not prejudicial. MR. RUBENSTEIN. Do we know why trial defense counsel Meyer elected one theory of defense over the other? MS. GARRETT. There's nothing in the record to indicate that. MR. RUBENSTEIN. And we have no affidavit or testimony from him? MS. GARRETT. No, I – counsel would be better – opposing counsel would be better to address this, but I believe in one of her declarations, she tried to locate him, but was – he's out of state. MR. RUBENSTEIN. Okay. MS. GARRETT. Unless there's any further questions, respondent will submit. MR. RUBENSTEIN. I don't see any. Thank you for your argument, counsel. Rebecca? MS. REBECCA. If it please the Court, Mr. Meyer just couldn't be found. I tried to trace him. It's in my declaration. The last place we knew of him was some P.O. box in some far outpost in Utah. He never responded to any correspondence.  MR. RUBENSTEIN. It is a long ways away, Utah. MS. REBECCA. It is – it's – he couldn't – there was no street address. I tried every database that I know of, and if TRW can't find you, you don't exist, I think, these days. I would say that the backpack was – was open to two interpretations, and I cite authority in my reply brief that duct tape, gloves, and ammunition also are consistent with drug dealing. And Mr. Meyer simply did not leave any reasonable alternative to first-degree murder. He simply argued a theory that was absolutely ludicrous. There was evidence of a third party. Take away everything else that counsel says that, oh, well, maybe Alejandro had gunshot residue on his hand because he was shot. There was a ski mask by the body with hairs that couldn't have belonged to my client or the co-defendant and saliva that they did DNA testing on and didn't belong to either one of them. And Mr. Meyer's explanations for not trying to find these witnesses, that two of them were out of state in an LWOP case, Your Honor, that's absurd. And that one of them is Spanish-speaking in the state of California. He can't find an interpreter. That's ludicrous. I'd submit it. Thank you very much for your argument, counsel. Thank you, both sides, for their arguments. The case just argued will be submitted.
judges: Hawkins, Smith, Cowen